

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-14-00313-CR

ROBERT O'BRYAN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY
TRIAL COURT NO. CR-2013-08057-A

----------

## DISSENTING OPINION

----------

Respectfully, I cannot join the thoughtful majority. I do not understand the majority's hypothesis that in Texas, imputed knowledge may only expand the authority of the prosecution but may not protect the constitutional rights of the accused.

The obligations stemming from imputed knowledge within the prosecution team have long been recognized in Texas courts. In 1989, in an early

exoneration case, the Texas Court of Criminal Appeals concluded that Randall Dale Adams had been convicted of capital murder on perjured testimony.[1] The Texas Court of Criminal Appeals explained,

> The issue of Miller's perjurious testimony regarding her identification of the applicant involves both the suppression of evidence favorable to the accused and the State's knowing use of false testimony. During the applicant's trial, after the three rebuttal witnesses had testified and Miller had identified the applicant, the State closed. The applicant's attorney then belatedly requested a hearing outside the presence of the jury in order to determine whether Miller's identification testimony had been tainted by an improper photo spread or lineup. The trial judge observed that the request was untimely because Miller had already identified the applicant. Nevertheless, he permitted the hearing to allow the applicant to perfect a bill of exception. It was during this hearing that Miller perjured herself by testifying falsely that she had identified the applicant in a lineup and that no one had influenced her in her identification. After the hearing the trial judge commented that he considered the issue of a tainted identification to have been waived by the defense, but emphasized that the defense had the right to go into it in front of the jury. In this regard it must be remembered that at this time the applicant had no knowledge of the truth about the identification or the prior inconsistent statement.
>
> Following his comments to counsel, the judge concluded[] that Miller's identification testimony "was not influenced either by the witness having seen photographs of the defendant or by the witness having viewed the defendant in a lineup of people conducted by law enforcement authorities." He further stated: "The Court finds there is no taint, that the identification of the witnesses in court is based solely on the witnesses having viewed the defendant at the time and place where the offense was committed as alleged in the indictment." He also comment[ed] that irrespective of his factual findings a waiver of a defect in the identification had occurred.
>
> Mulder testified that he did not know Miller had identified someone other than the appellant in the lineup, nor did he know that

---

[1] *Ex parte Adams*, 768 S.W.2d 281, 290–91 (Tex. Crim. App. 1989).

2

the officer in charge of the lineup told her who she should have identified. However, this is insufficient to remove the taint of the prosecution's knowing use of perjured testimony. As previously noted, the United States Supreme Court has expressly recognized that when confronted with perjurious testimony the prosecutor has a duty to correct it. Further, whether the prosecutor had actual knowledge of the falsity of the testimony is irrelevant. If the prosecutor should have known is sufficient. Thus, the Supreme Court has endorsed the imputation of knowledge, at least from one prosecutor to another. However, the extent of this imputation of knowledge has been expanded. In *Williams v. Griswald*, the court of appeals stated: "It is of no consequence that the facts pointed to may support only knowledge of the police because such knowledge will be imputed to state prosecutors." In *United States v. Antone*, the court of appeals observed that it has "declined to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel."

The Dallas police officer that "helped" Miller was by her own admission in charge of the lineup. Consequently, as a part of the investigating team his knowledge of Miller's lack of identification at the lineup and his assistance to her is imputed to Mulder. Consequently, when Miller testified that she had identified the applicant in a lineup Mulder had an obligation to correct the perjured testimony.[2]

The *Adams* court "declined to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel."[3]

---

[2]*Id.* at 291–92 (citations omitted).

[3]*Id.* at 292; s*ee also Ex parte Castellano*, 863 S.W.2d 476, 484–85 (Tex. Crim. App. 1993) (holding that peace officer who was not assigned to an arson case but who took it upon himself to assist and engage in perjury for private reasons was nevertheless acting under color of law and part of the prosecutorial team).

The imputed knowledge rule is still alive and well. In 2014, the Texas Court of Criminal Appeals stated,

> In *Moulton*, the Supreme Court indicated that a *Massiah* violation occurs only if the State "knowingly circumvented" the right to counsel. The court of appeals's opinion suggests that a knowing circumvention did not occur because Midland law enforcement was unaware that appellant had counsel. Appellant's position is that the knowledge of Ector County law enforcement should be imputed to Midland County law enforcement.
>
> Appellant has the better of the argument. In *Michigan v. Jackson*, the Supreme Court held that the State is responsible, in the Sixth Amendment context, for the knowledge of all of its actors:
>
>> Sixth Amendment principles require that we impute the State's knowledge from one state actor to another. For the Sixth Amendment concerns the confrontation between the State and the individual. One set of state actors (the police) may not claim ignorance of defendants' unequivocal request for counsel to another state actor (the court).
>
> In so concluding, the Supreme Court cited and quoted from *Moulton*, a *Massiah* case. It is true that, in *Montejo v. Louisiana*, the Supreme Court overruled *Jackson* insofar as it imposed a prophylactic rule forbidding interrogation once the accused has requested counsel. But the *Montejo* decision expressly stated that it was not concerned with the substantive scope of the Sixth Amendment right to counsel, and in so saying it cited both *Moulton* and *Massiah*. We do not agree with the court of appeals that the Supreme Court's decision to overrule *Jackson* constituted an abandonment of the rule of imputing knowledge to the State.[4]

The majority is correct that, generally, the police may detain a person based on an entry in NCIC. But in the case now before this court, the Denton

---

[4]*Rubalcado v. State*, 424 S.W.3d 560, 573–74 (Tex. Crim. App. 2014) (citations omitted).

4

police department was aware that the car was not stolen and that there should be no NCIC entry reporting that it was stolen. No one knows why the stolen vehicle report was not properly withdrawn. But the knowledge of the Denton police department is imputed to Northlake police.[5] Consequently, police had no reasonable suspicion to support their original detention of Appellant.

The majority appears to suggest a good faith exception to the warrant requirement when the police rely on NCIC. But Texas recognizes only the good faith exception found in the Texas Code of Criminal Procedure:

> It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.[6]

In the case now before this court, there is no warrant, and there is no requirement that a neutral magistrate screen the information before it can be entered on NCIC. Under the facts of this case, good faith does not justify the unlawful detention of Appellant, nor does the NCIC entry that should have been withdrawn because the Denton police candidly explained that they knew the car had not been stolen, that it had been reported to them as stolen in error, and that the entry should have been withdrawn. The original detention of Appellant was unlawful.

---

[5] *See id.* at 574.

[6] Tex. Code Crim. Proc. Ann. art. 38.23(b) (West 2005).

5

For these reasons, I must respectfully dissent.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  May 28, 2015